[Civ. No. 23911. Second Dist., Div. Two. Nov. 19, 1959.]

BELLWOOD DISCOUNT CORPORATION (a Corporation), Appellant, v. EMPIRE STEEL BUILDINGS COMPANY (a Corporation) et al., Respondents.

William A. Wittman, Alice Lee Bishop and Ray L. Mayfield for Appellant.

Robert M. Miller for Respondents.

FOX, P. J.—Plaintiff, referred to herein as Bellwood, seeks (1) to rescind a building contract that it had entered into with defendant, referred to herein as Empire, and (2) to recover its initial payment under said contract.

By the terms of this contract, entered into in March, 1956, Empire agreed to furnish all labor and materials to construct a tapered girder steel panel building on a parcel of land, owned by plaintiff, in the city of Indio, and ". . . to furnish necessary engineering of structural steel and concrete block walls and foundation drawings *only*." (Emphasis added.) Under the heading *Work not included* was the following: "Any item not specifically mentioned, electrical, plumbing, concrete work, reinforcing steel, painting, or interior partitions." The contract also stated that the contractor ". . . will obtain necessary permits covering *the work set forth in this contract* at the expense of the owner." (Emphasis added.) The contract price was $34,000, and the final 10 per cent was payable "upon completion of Empire's *portion* of the work. . . ." (Emphasis added.)

This building was to be the repair shop portion of a structure that Bellwood was erecting for use as an automobile agency. Bellwood's own architect was to design the showroom and the other facilities which comprised this development.

After the contract was signed, Empire prepared a set of plans for submission to the Building Department of Indio covering the structural details of the contemplated building and the concrete walls and foundations. These plans were

submitted to and approved by Bellwood and then filed with the building department, Bellwood paying the filing fee. The building department returned the plans along with a "plan correction sheet" specifying certain additional information which had to be furnished before a building permit could be issued. Included were such items as plumbing, electrical facilities, an exhaust system, and other ordinary fixtures. Also listed were certain items required by the fire prevention provisions of the building code relating to the use of the structure as an automotive repair shop, which required either installation of automatic sprinklers or the division of the building into two parts by a proper fire resistant wall. The subject of a sprinkling system was not discussed between the parties prior to making the contract. Interior walls were not contemplated by the contract and Bellwood had expressly stated to Empire that no interior walls were to be used in the design of the building. After the building department pointed out the need for one or the other of these items, Bellwood served notice of rescission on Empire and demanded the return of its initial payment of $6,800, which had been made pursuant to the contract. Bellwood based its right to rescind the contract on the ground of mistake.

The trial court rendered judgment for Empire on the ·complaint,[1] ruling that Bellwood had no right to rescind. Further, the court held that Bellwood was not entitled to a return of any portion of the initial payment and awarded Empire attorney's fees in the sum of $1,500. From this judgment Bellwood has appealed.

Mistake, either of law or fact, as grounds for rescission of contract, must affect the execution and material elements of the contract and not merely some collateral matter. (Civ. Code, §§ 1577, 1578; *Hannah* v. *Steinman*, 159 Cal. 142 [112 P. 1094]; *Vickerson* v. *Frey*, 100 Cal.App.2d 621 [224 P.2d 126].)

The trial court found, *inter alia*, upon substantial evidence, that: "It was never intended by the parties that the contract was to cover the entire project. The contract so provides. Work by others was intended. Defendant was to receive final payment upon completion of defendant's portion of the work. The contract expressly excludes 'any item not specifically mentioned, electrical, plumbing, or interior partitions.' De-

---

[1] Empire filed a cross-complaint for damages for breach of contract. However, it is not involved in this appeal.

fendant had no right or power to deal with any matter other than the building shell and the engineering thereof and the foundation drawings. All other matters were left to plaintiff. Plaintiff never sought from defendant and defendant never offered advice regarding any phase of the project except that expressly covered by the contract. Defendant had *no such duty*. If plaintiff failed to consider the need for automatic sprinklers, partition walls, plumbing, ventilating or other matters not expressly covered by the contract it was of no concern of defendant and was a *collateral matter.*'' (Emphasis added.)

From the foregoing it is apparent that no provision for either a sprinkling system or a fire resistant interior wall was included in the contract and that Empire owed Bellwood no duty with respect thereto. These items were collateral to the agreement of the parties. Therefore, the court correctly held that plaintiff had no right to rescind on the ground of mistake. (Civ. Code, §§ 1577, 1578; *Hannah* v. *Steinman, supra; Vickerson* v. *Frey, supra.*)

Bellwood also contends that it had a right to rescind the contract on the grounds of fraud, illegality and impossibility of performance. On the issue of fraud, the trial court in a memorandum opinion stated: ''Because the terms of the contract placed no duty upon Empire to advise Bellwood regarding phases of the project not covered by the contract, Empire had no duty to speak on those subjects, and its failure so to do cannot amount to fraud.'' We agree with this conclusion which is in harmony with the findings. Furthermore, the court upon sufficient evidence held that failure to obtain the necessary permits and to proceed further with the work under the contract was due entirely to the refusal of Bellwood to supply the necessary additional information to the building department. Therefore, performance by Empire would have been neither illegal nor impossible if Bellwood had met its obligations under the contract. Bellwood's further contention, that the contract was illegal in that Empire did not perform the required engineering services as a registered engineer, is answered by the direct evidence that Empire's Chief Engineer, Mr. Karp, was a registered civil and structural engineer and personally drew the plans. (Bus. & Prof. Code, § 6738, subd. (a)(1).)

Bellwood also complains of the trial court's decision that it was not entitled to the return of any portion of the

$6,800 initial payment made by it to Empire. Bellwood principally relies on Civil Code, section 3275 and the case of *Freedman* v. *Rector*, 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1], in support of its argument that it was entitled to restitution under its second cause of action for "money had and received." Civil Code, section 3275, reads: "Relief in Case of Forfeiture. Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, *except in case of a grossly negligent, willful, or fraudulent breach of duty.*" (Emphasis added.) The trial court reasonably concluded that Bellwood willfully failed to perform its obligations under the contract and further, that it willfully refused to allow Empire to continue performance. Therefore, Bellwood is not entitled to relief under section 3275.

The Freedman case laid down the rule that a defaulting vendee could be relieved from forfeiture upon proof of unjust enrichment even though his default was willful. The rule of the Freedman case was discussed in *Bird* v. *Kenworthy,* 43 Cal.2d 656 [277 P.2d 1], the court holding (p. 659): "To have the benefit of the rule against unjust enrichment, the burden of proof is upon the defaulting vendee to show that the payments made by him exceed the vendor's damages." Assuming that the rule of the Freedman case applies in the present case, Bellwood has not shown that Empire was unjustly enriched.

On this issue Bellwood only offered to prove Empire's loss of profits occasioned by the former's breach of contract. This offer was rejected by the trial court. The rejection of this evidence was entirely proper for the reason that it did not encompass the full scope of the damage suffered by Empire as a consequence of the breach. Only such amount as remained after full compensation to Empire would constitute unjust enrichment. In *Cederberg* v. *Robinson,* 100 Cal. 93 [34 P. 625], the court quoted with approval the language of *United States* v. *Behan,* 110 U.S. 338 [4 S.Ct. 81, 28 L.Ed. 168]: "The profits and losses must be determined according to the circumstances of the case and the subject matter of the contract. The *reasonable expenditures already incurred*, the *unavoidable losses incident to stoppage*, the progress attained, the unfinished part and the probable cost

of its completion, the whole contract price and the estimated pecuniary result, favorable or unfavorable to him, had he been permitted or required to go on and complete his contract, may be taken into consideration.'' (Emphasis added.) In *Upstone* v. *Weir*, 54 Cal. 124, 126, it was held: ''More succinctly stated, the rule is recompense to the plaintiff for the part performance, and indemnity for his loss in respect to the part unexecuted.'' In *Walpole* v. *Prefab Mfg. Co.*, 103 Cal.App.2d 472, 482 [230 P.2d 36], the court stated: ''Expenses incurred in anticipation of, or preparation for, performance, ordinarily are a recoverable element of damage for breach of contract.'' Since Empire had partly performed under the contract, Bellwood's offer of proof of loss of profits only was insufficient, as a matter of law, to prove the amount of damages suffered by Empire. Since Bellwood neither proved nor sufficiently offered to prove that Empire was not damaged to the extent of the initial payment, it follows that plaintiff was not entitled to recover any portion of it. (*Major-Blakeney Corp.* v. *Jenkins*, 121 Cal.App.2d 325, 332-333 [263 P.2d 655] ; see *Furst* v. *Scharer*, 119 Cal.App.2d 605 [260 P.2d 198] ; *Baffa* v. *Johnson*, 35 Cal.2d 36, 39 [216 P.2d 13] ; also *Norris* v. *San Mateo County Title Co.*, 37 Cal.2d 269, 273 [231 P.2d 493].)

 The trial court awarded Empire an attorney's fee of $1,500. Bellwood assigns this ruling as error, but its position is not well taken. The contract between the parties provides: ''In the event suit shall be instituted by reason of this contract by either party hereto, the *prevailing* party in any such suit or settlement shall be entitled to payment by the other party of such reasonable attorney's fees and court costs as actually incurred and/or paid by such party.'' (Emphasis added.) Empire, as the prevailing party, was entitled to ''reasonable'' attorney's fees. An appellate court will not disturb an award of attorney's fees made by the trial court in the absence of a manifest abuse of discretion. (*Credit Bureaus of Merced County, Inc.* v. *Shipman*, 167 Cal.App.2d 673 [334 P.2d 1036] ; *Biaggi* v. *Sawyer*, 75 Cal.App.2d 105 [170 P.2d 678].) In view of the record in this case, the award is not excessive.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.